# Exhibit 2

# Declaration of Hussein Abu Hassan

I, Hussein Abu Hassan, being legally fit and qualified to testify in a court of law (except temporarily unable to travel due to a lung transplant), and having personal knowledge of the facts contained herein, do hereby declare under the penalties of perjury (28 U.S.C. Section 1746) that the following is true and correct:

1. I am the Founder and Executive Chairman of BeMotion Inc. ("BeMotion"), a privately-held technology company. BeMotion has approximately 20 employees and offices in Toronto, Canada Amman, Jordan and Dubai. Prior to March 2020, BeMotion focused upon digital marketing services. In or around March 2020, BeMotion began pursuing a new business line, the sale of non-contact human temperature screening systems ("thermal scanning equipment") to customers.

2. In January 2020, BeMotion entered into an agreement with Turbo Global Partners, Inc. ("TRBO" or "Turbo"), to provide digital vending machines to a supposed TRBO pharmacy client in the United States. My primary contact with TRBO when entering into this agreement was Robert W. Singerman ("Singerman"), who I understand is the Chief Executive Officer of TRBO. I have spoken to Singerman on the telephone but have never met him personally. A copy of the contract is attached hereto as Exhibit A.

3. BeMotion's agreement with TRBO provided that BeMotion would have the opportunity to review press releases before they were distributed by TRBO.

4. According to Singerman, TRBO had a relationship with a pharmacy chain in the United States with a substantial number of locations where BeMotion's digital vending machines would be installed.

5. BeMotion also provided digital marketing services to TRBO, and prepared a website for it.

6. TRBO did not purchase any digital vending machines from BeMotion or pay for the website that BeMotion prepared for it.

7. When I followed-up with Singerman on TRBO's proposed purchase of vending machines from it, Singerman advised that he was attempting to raise money for TRBO, and asked BeMotion if it would assist TRBO in finding investors for TRBO. I told Singerman that I did not know anyone who would be interested in a penny stock company like TRBO. He did not ask me to personally invest in it.

8. In March 2020, BeMotion signed an agreement with Senopex, a company located in China, which empowered BeMotion to sell Senopex's thermal scanning equipment outside of China.

9. In late March 2020, I shared a brochure for the thermal scanning equipment with Singerman. Singerman expressed strong interest in the equipment, and said that he knew many people, including U.S. Governors, their Chiefs of Staff and a U.S. Mayor who would be interested in it.

10. Singerman asked me if TRBO could serve as BeMotion's exclusive

distributor for the thermal scanning equipment. I told Singerman that TRBO could not distribute the thermal scanning equipment unless TRBO had customers for it, and that TRBO could not serve as BeMotion's exclusive distributor for it. BeMotion never entered into any agreement with TRBO to serve as its distributor for the thermal scanning equipment.

11. In April 2020, an attorney with the Securities and Exchange Commission ("SEC") contacted BeMotion and requested an opportunity to speak to me about TRBO's "strategic alliance" with BeMotion, and the press releases that had been issued by TRBO regarding it. When I advised Singerman of the contact, Singerman told me that the inquiry was a sham and that BeMotion should not respond to the SEC's overture. Nonetheless, a colleague of mine at BeMotion contacted the SEC.

12. After BeMotion contacted the SEC, I learned that TRBO had issued press releases on March 30, 2020 and April 3, 2020, pertaining to the thermal scanning equipment and purported arrangement between BeMotion and TRBO for the sale of it. I was unaware of these press releases when they were issued, and did not authorize or approve them prior to TRBO's issuance of them.

13. It is my opinion that issuing these press releases without prior approval from anyone at BeMotion violated the provision within the January 2020 agreement with TRBO that provided that BeMotion would have the opportunity to review press releases relating to BeMotion before they were issued by TRBO.

14. I have reviewed the press release issued by TRBO on March 30, 2020. A copy of the release is attached as Exhibit B. The release is false and misleading in several respects, including the following:

15. First, the release claims that "BeMotion … is [the] Front Facing Partner in the MULTI-NATIONAL PUBLIC-PRIVATE PARTNERSHIP (PPP) for this innovation which simply stated is, **THE ONLY SCANNING TECHNOLOGY ON THE PLANET WITH NON-CONTACT INTELLIGENT HUMAN TEMPERATURE SCREENING AND FACIAL RECOGNITION**[.]" This statement is false in several respects. There is no public/private partnership. BeMotion is not involved in any partnership, formal or otherwise, with any governmental entity related to the thermal scanning equipment and never advised Singerman that it was. Furthermore, while the technology characteristics that Singerman described might not be commonplace, other companies make equipment with these capacities, too, and BeMotion's thermal screening equipment was not the only one of its kind "on the planet." Moreover, in describing the system as having facial recognition ability, Singerman mischaracterized the thermal screening system that BeMotion is empowered to sell. In this regard, BeMotion told Singerman that its thermal scanning technology did not have facial recognition capability, but did have face detection ability (*i.e.*, it can distinguish a face from a cup of coffee).

16. Second, the release claims that "TURBO is the U.S. Lead Coordinating Agent and Intermediary" for BeMotion's thermal scanning equipment. That is a false statement. Neither I nor anyone at BeMotion advised Singerman that TRBO would have that role. BeMotion did not enter into any agreement with TRBO regarding BeMotion's thermal scanning equipment, and TRBO is not the "U.S. Lead Coordinating Agent and Intermediary" for the equipment.

17. Third, the quotation in the release attributed to me is fictitious. I never said it. It is not a statement made by me and I did not authorize its use.

18. Fourth, the release quotes me as stating that BeMotion and TRBO "are ready to deploy" the thermal scanning equipment and that such equipment "is ready to ship within five (5) days from receipt of order." These are false statements. Prior to March 30, 2020, I told Singerman that it takes 30 days from an order to produce 1000-1500 units of the thermal scanning equipment. I further advised him that, if BeMotion had the units in storage in Canada, it could ship them within 5-7 days. I also told Singerman that BeMotion did not have the thermal scanning equipment in Canada at that time. Thus, as of March 30, 2020, the equipment was not "ready to deploy" and could not be shipped within 5 days after BeMotion received an order.

19. I have also reviewed the press release issued by TRBO on April 3, 2020. A copy of the release is attached as Exhibit C. That release makes at least one additional misrepresentation.

20. Specifically, that press release states "TURBO Global Partners, Inc. Provides Progress Update #1 of **its** NON-CONTACT INTELLIGENT THERMAL HUMAN BODY SCANNING TECHNOLOGY," and that Singerman had contacted "every U.S. Governor office [sic] and their Chief of Staff . . . and we have submitted the Technical Documents for **our** technology." (Emphasis added). This incorrectly suggests that TRBO owns or has an interest in the thermal screening equipment. In fact, however, TRBO does not own or have any interest in the thermal scanning equipment, as BeMotion has never had any agreement regarding the equipment with TRBO.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

This __6__ day of May 2020.

_____
Hussein Abu Hassan
